UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

HUSEYIN CAN,

                      Plaintiff,

                                                             <u>DECISION AND ORDER</u>

                                                             09-CV-6484L

                     v.

UNITED STATES OF AMERICA DRUG
ENFORCEMENT AGENCY,
UNITED STATES MARSHALS OFFICE,

                      Defendants.
_____

Plaintiff, Huseyin Can ("Can"), was arrested on drug charges by officers from the Greater Rochester Area Narcotics Enforcement Team ("GRANET") at the Monroe County, New York Airport on May 27, 2004. GRANET officers seized $27,073.00 from Can, which was turned over to the Federal Drug Enforcement Agency ("DEA"), and administratively forfeited to that agency on November 8, 2004 pursuant to 21 U.S.C. §881, under the procedural guidance of 18 U.S.C. §983 and 19 U.S.C. §§1602-1619.

On September 23, 2009, more than five years after the initial seizure of the money at the airport, Can, represented by counsel, filed a complaint and moved pursuant to FED. R. CRIM. PROC. 41(g) to vacate the administrative order of forfeiture, and for return of the monies.

The Government opposes the motion and has cross moved to dismiss the complaint (Dkt. #7) on several grounds, including that Can's claim is untimely, the statute of limitations for such actions having run prior to commencement of this lawsuit. The Government also contends that Can, in fact, learned of the administrative proceedings long prior to the administrative forfeiture, failed to take

appropriate action to seek return of the money, and is therefore precluded from seeking relief now.

After review of all the materials submitted, I agree with the Government's position, and grant its motion to dismiss the complaint with prejudice.

DISCUSSION

The Government cites several grounds for the dismissal of plaintiff's complaint. First of all, Can seeks relief under FED. R. CRIM. P. 41(g), which pertains to the return of personal property improperly seized by the Government. Reliance on that section is misplaced. Can is attempting to set aside an administrative forfeiture, the procedure for which is contained in the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA") at 18 U.S.C. §983. Section 983(e)(5) expressly provides that: "[a] motion filed under this subsection shall be the *exclusive remedy* for seeking to set aside a declaration of forfeiture under a civil forfeiture statute." 18 U.S.C. §983 (emphasis added).

The exclusivity of Section 983 as the remedy for setting aside a non-judicial declaration of forfeiture is well-settled. *See Valderrama v. United States,* 417 F.3d 1189 (11th Cir. 2005); *Hayes v. United States*, 2009 U.S. Dist. LEXIS 60995(S.D.N.Y. 2009); *Bermudez v. City of New York Police Department,* 2008 U.S. Dist. LEXIS 61556 (S.D.N.Y. 2008).[1]

---

[1] The Court notes at least one example of contrary authority, wherein a district court determined that the enactment of forfeiture proceedings under the procedural auspices of 19 U.S.C. §§1902 et seq. rendered CAFRA inapplicable, on the grounds that CAFRA exempts from the "civil forfeiture statute[s]" to which its provisions apply, "any . . . provision of law codified in title 19." 18 U.S.C. §983(i)(2)(A). *See Adeyi v. United States*, 2010 U.S. Dist. LEXIS 10961 (E.D.N.Y. 2010) (unpublished slip opinion). However, other courts entertaining identically-situated motions have not seen fit to question CAFRA's applicability to non-judicial forfeiture procedures conducted under the auspices of Title 19. *See e.g.*, *Hayes*, 2009 U.S. Dist. LEXIS 60995 at *3-*4, *9-*11. I conclude that in this case, application of CAFRA is appropriate, chiefly because I find no support for the proposition that the Government's mere use of Title 19 procedural guidelines for a forfeiture proceeding authorized by another title somehow vests statutory authority for the proceedings solely in Title 19. Here, the underlying seizure took place pursuant to 21 U.S.C. §881, and Title 19 procedures were applied only insofar as they were made applicable and incorporated by reference in 21 U.S.C. §881(d). Indeed, both sources of statutory authority were explicitly cited in the Government's notices of the forfeiture proceedings that were sent to Can. (Dkt. #7-2, Exhs. 1, 3). Thus, I find that the forfeiture proceedings cannot be said to have arisen under a "provision of law codified in title 19," and that CAFRA therefore

(continued...)

Although the Government contends that Can is not entitled to the protections of CAFRA because he had actual notice of the forfeiture proceedings and failed to take timely action concerning them, even if Can is entitled to proceed, the Government contends that the action is untimely, having been filed beyond the five year statute of limitations.

I agree with the Government that the statute of limitations has run on this action. The statute provides that a motion to set aside a declaration of administrative forfeiture must be filed not later than five years after the date of final publication of the notice of seizure of the property. 18 U.S.C. § 983(e)(3). According to the affidavit of John Hieronymus ("Hieronymus"), Forfeiture Counsel Drug Enforcement Administration, sworn to October 21, 2009, the final publication of the notice of seizure was made in the *Wall Street Journal,* pursuant to 19 U.S.C. § 1607(a), once a week for three successive weeks, August 9, 16, and 23, 2004. (Dkt. #7-2 at ¶4(d)). The complaint in this federal action was not filed until September 23, 2009, one month after the five year statute of limitations expired. Can's failure to file this complaint within the five years statute of limitations requires that the complaint be dismissed. *See Hayes*, 2009 U.S. Dist. LEXIS 60995 at *26.

Can's failure to bring this action within the statute of limitations provides a basis for dismissal of the complaint upon that ground alone. However, I find that even if the action were timely, Can would not be entitled to relief, because the evidence establishes that Can knew of the administrative forfeiture proceedings and failed to take timely action to oppose the forfeiture.

According to Hieronymus, the DEA sent proper notices to Can's last known address at 1119 English Village Drive, Rochester, New York. The DEA made three delivery attempts, each of which was unsuccessful. The DEA later learned that there was a possibility Can and his family might have left the country and returned to Turkey, and in August of 2004, the notice of seizure was published in the *Wall Street Journal* pursuant to 19 U.S.C. §1607(a) and 21 C.F.R. §1316.75. Shortly

---

[1](...continued)
applies. 18 U.S.C. §983(i)(2)(A).

thereafter, on October 4, 2004, the DEA received a written claim for the seized monies from attorney Miguel A. Reyes, Rochester, New York, on Can's behalf. (Dkt. #7-2 at ¶4).

That letter from attorney Reyes, dated September 29, 2004, is notable in several respects. First of all, the letter clearly states that Can makes claim to the money seized from him at the airport in Rochester on May 27, 2004. That letter from Reyes showed that it had been copied to Can. The letter also indicates that Can had left the country, but when he returned he found a postal service form alerting him to the fact that a notice had been sent to him from the DEA.

Can has also submitted an affidavit sworn to March 1, 2010, which is annexed to attorney Louis V. Asandrov's letter of March 11, 2010, (Dkt. #9). In that affidavit, Can acknowledges that he found a notice in his mailbox on or about September 16, 2004 when he returned from Turkey which informed him that someone had attempted to so send him a letter, and that he turned the matter over attorney Reyes. According to Can, Reyes took some action but eventually advised Can that he would not handle the case. Can states in his affidavit that he then hired another attorney named "Sandy" from "the Barnes Firm" to assist him obtaining his money, and that he eventually hired his present lawyer, Asandrov, in August 2008. (Dkt. #9).

When the DEA received attorney Reyes' letter of September 29, 2004, the DEA sent a notice to Can in care of attorney Reyes in Rochester, New York relating to the claim that Reyes had filed (Dkt. #7-2, Exh. 7). The notice listed the Asset ID Number, the case number and the amount of funds seized, $27,073.00. It advised Can that the claim was being returned because it was untimely, but further notified Reyes that the DEA would allow the petitioner twenty days from receipt of the letter to file a petition for remission or mitigation of the seizure.

No further action was taken by Reyes, Can or any other person acting on Can's behalf relative to the administrative proceedings and, therefore, the monies were forfeited administratively on November 8, 2004.

Although Can now claims that the DEA did not follow proper procedures, it is clear that it did. The DEA appears to have complied with all applicable regulations. Proper procedures were

followed but neither Can nor his representatives pursued the remedies that were available. Based on the letter Reyes sent to the DEA, as a representative of Can, it is clear that Can and his representative knew that forfeiture procedures had been instituted, and that the Drug Enforcement Administration, Asset Forfeiture Section, was the agency handling the seizure. The DEA's response by notice (Dkt. #7-2, Exh. 7), confirmed for Reyes and Can that the proper agency had been contacted, and set forth a specific remedy for Can. Reyes' letter to the DEA was copied to Can and, therefore, Can's present claim that he was unaware of Reyes' actions is not credible.

In point of fact, Reyes was not the only lawyer hired by Can. It appears that Can has retained at least three attorneys relative to his attempts to recover the seized and forfeited monies prior to expiration of the statute of limitations. (Dkt. #9).

A fourth attorney, Sareer Fazili, submitted an affirmation on March 9, 2010, which was also annexed to the letter of attorney Asandrov of March 11, 2010. (Dkt. #9). Fazili indicated that he also had been contacted by Can pertaining to the recovery of monies seized at the airport. Although Fazili did not recall when he was contacted, his communications with Can took place at some point after Reyes' involvement, because Fazili recalled having unsuccessfully attempted to obtain background information on the matter from Reyes. Fazili claimed he was unable to obtain sufficient information about the money or the agency that had it in possession, and therefore he did not file any claim.

Nor did plaintiff's claim become untimely prior to the retention of his present counsel, Asandrov, who was retained by plaintiff in August 2008, over a year before expiration of the statute of limitations. Asandrov sent a letter to the Drug Enforcement Administration, dated August 5, 2009 (Dkt. #10, Exh. A). In that letter, Asandrov indicates that someone from the District Attorney's Office in Monroe County advised Asandrov on July 20, 2009, that the DEA had custody of the monies and Asandrov had been provided with the appropriate asset identification number and case number. Asandrov's correspondence thus establishes that Can and his counsel had all the information necessary to make a timely claim for more than a year prior to expiration of the five-year statute of limitations.

Taken together, the materials submitted on the motion, by both sides, conclusively demonstrate that Can himself knew of the seizure and the DEA's involvement in it. Can's first attorney, Reyes, knew based on his September 29, 2004, letter to the DEA which was copied to Mr. Can. It also appears that Can had not only contacted Reyes, but two other attorneys about the matter, and that by the time Can's present lawyer was retained, over a year prior to expiration of the statute of limitations, Can knew which agency had custody of the seized monies, and had sufficient information to make a claim.

Plaintiff argues that even if his claim is untimely, the Court should equitably toll the statute of limitations, for various reasons. I see no reason justifying equitable tolling. Can knew of the seizure and had retained several attorneys to work on the matter. The fact that these attorneys may not have taken timely or appropriate action should not inure to the detriment of the Government. *See generally Reilly v. Natwest Mkts. Group Inc.*, 181 F.3d 253, 271 (2d Cir. 1999) ("civil litigants are bound by the acts and omissions of their freely selected attorneys"); *SEC v. McNulty*, 137 F.3d 732, 739 (2d Cir. 1998) ("[n]ormally, the conduct of an attorney is imputed to his client, for allowing a party to evade 'the consequences of the acts or omissions of []his freely selected agent' 'would be wholly inconsistent with our system of representative litigation'"), *quoting Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34 (1962).

CONCLUSION

The Government's motion to dismiss (Dkt. #7) and its renewed motion to dismiss (Dkt. #16) are granted. Plaintiff's cross-motion for summary judgment (Dkt. #12) is denied. Plaintiff's first (Dkt. #2) and second amended motions to vacate the administrative order of forfeiture (Dkt. #14) are denied. Plaintiff's complaint is dismissed, with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
January 21, 2011.